Court is now in session, and I'm presiding for my first time, so please, I ask everyone to be patient with me. And not to step on our presiding justice's toes this morning, but we would like to welcome someone today, Ms. Sarah Woodman, who is here to watch her daughter as a presiding justice of her first day. So, welcome to our historical courthouse. I know you were here before, but welcome again. All right, and because of that, I'm now presiding, so again, be patient with me, thank you. So our first case of the day is People v. Powell, 5-25-0125. For the appellant, Ms. Palchuk? Yes. All right, and for the appellee, Mr. Holden? Yes, ma'am. Did I pronounce that correctly? You got it. All right, Ms. Palchuk, if you are ready, you may come forward, and if you would, please state your name into the microphone. Good morning, Your Honors. For the record, my name is Tressa Palchuk, and I represent Mr. John Powell in this matter. I did raise two issues in my briefs. However, I do intend to just focus on the first issue today, which is that 403 issue. Your Honors, this very court in People v. Taylor back in 2022 ruled that a defendant should be judged only on the conduct of the crime he faced, not on improper grounds based on evidence that carries unfairly prejudicial baggage. And while the crimes charged against Mr. Powell were regarding conduct, to use the trial court's words, that was an administrative function at its most basic level, namely failing to register a new address within three days of moving and providing false information when he last registered, he was actually judged because he was a sex offender. That status, that sex offense status, was only relevant to the charged conduct insofar as it provided a basis for his registration requirement. Now, Old Chief v. United States and its Illinois progeny make it crystal clear that where the prior conviction is offered only to prove that status element, which is prior conduct wholly unrelated from the charged conduct, and where the defendant is offered to stipulate to that status, the stipulation has to be accepted and the state has to be disallowed from introducing evidence of that prior conviction because it's highly prejudicial and because it's no longer necessary or needless surplusage. Now, in his trial, Mr. Powell did stipulate and his counsel offered to stipulate as follows. Mr. Powell was previously convicted of a qualifying felony that requires him to register under Illinois. Old Chief and its Illinois progeny are, of course, related to gun offenses, unlawful use of a weapon by a felon, and armed habitual criminal. And Mr. Powell is, of course, charged with failure to register. But the logic of Old Chief still applies here. It's about status. The term or the status of being a sex offender imposes nothing different from that felon term or status. It operates just the same way as the felon status in Old Chief. Both impose a continuous duty or an affirmative duty on the individual charged. For example, if you're convicted of a felony, of course, you are prohibited from possessing guns moving forward. In the same way, Mr. Powell, charged with a previous sex offense, is prohibited from moving where he wants without informing the sheriff of his location or change of address. You can frame that in a different way. Restricted conduct. A felon can't possess guns. Mr. Powell can't, excuse me, a gun offender is being observed or being monitored, so to speak, and is prevented from that affirmative conduct. And Mr. Powell is too. The distinction between felon's possession or that conduct based on status is really one of the semantics. As well, the term sex offender or the status of being a sex offender is not actually in the name of the statute, of course. Most of our criminal charges are housed in the criminal code. Mr. Powell's offense is housed in the code of corrections, and so the statutes are written somewhat differently. But the name of the actual statute that Mr. Powell is charged under is duty to register. And the way that we refer to a failure to register or conduct under that statute, to be more specific, does vary. I believe in the, excuse me, the PSI, his prior failures to register are actually referred to as violations of the sex offender registration, whereas in his indictment, he's charged with failure to register as a sex offender. So the terms themselves are varied, and there is not the same sort of specific indication from the legislature of what the name of that offense is. Regardless of the actual name, it's still subject to a 403 analysis. The sex offender status for Mr. Powell's being referred to as a sex offender also only serves one purpose. The state attempts to maintain that it serves multiple purposes or has multiple utility, but it simply serves as that status element, which, of course, Old Chief and its Illinois progeny take care of. Again, it's simply not related to the charged conduct in any meaningful way. Counsel, I know you want to focus on the first issue, but can I ask you a question related to the second issue?  So I think in your reply brief, you discussed Matthews, the Matthews case, and you said it was highly distinguishable. Can you help me understand that? Because if I'm not mistaken, your argument is that it was ineffective for counsel to fail to object to basically an improper characterization of the sentence. Is that correct? And you say that Matthews, the case of the state sites, can you help me with that distinction, please? Of course, Your Honor. So in Matthews, the court didn't specifically reference the error in that matter. So here, the sentencing court mentioned that improper sentence and referred to the fact that Mr. Powell had a seven-year sentence for failure to register when it was, in fact, 30 months of conditional discharge, and specifically pointed to that in his explanation for the imposition of the sentence. Whereas in Matthews, there were general references to a criminal history, but there was no specific focus on the actual error that counsel was arguing. So there is a difference between the two cases because we can't determine that weight in Matthews, given the sort of general nature of how that court was referring to the sentencing issue. Whereas here, we know the court acknowledged that erroneous sentence, and we know they placed some weight on it, and that he was specifically considering that improper sentence when imposing the 12-year sentence in this case. And what's our standard of reviewing a sentencing issue? Your Honor, it would follow strictly. So, of course, there has to be both error and prejudice. And I believe it's reviewed for ‑‑ I won't refer back to everything.  I'm just trying to determine how much weight this court should afford. If Matthews is distinguishable, what weight did the trial court place on that issue, and what weight should this court afford? I think, Your Honor, the question for the court is whether the error can be determined to be so insignificant that it didn't lead to a greater sentence. And I think here we can't say that. We've seen from the record, of course, that the court pointed to that sentence and was considering, of course, his whole criminal history, but specifically referenced that 7-year sentence. And I think when you look at Mr. Powell's criminal history where he, in the court's mind, had a probation sentence and then a 6-year sentence and a 7-year sentence, whereas in actuality he had a conditional discharge, probation, and a sentence, that's a very different context. How do we know that the trial court didn't focus on the 7-year erroneous prior, but instead focused on the abysmal criminal record? Well, again, I think it's about whether it was so insignificant that we can say that he didn't at all. And, of course, the trial court did talk about, and I think used the term abysmal, to describe Mr. Powell's criminal history. But it still remains that he focused on that 7-year sentence in issuing it and talked about that 7-year sentence in context of that criminal history. So he is specifically pointing out that sentence in consideration of his criminal history as a whole. I do understand he referenced the fact that his priors occurred in multiple counties and that he was looking at other parts of his criminal history, but it's the specific reference and focus that I think means that the error can't be considered insignificant. If there are no other questions about sentencing, I would... We'll give you a minute to finish up on your first point. Thank you. I appreciate it. Just a couple more points, Your Honors. The term sex offender is divorced from, again, the conduct at issue, the going to the Sheriff's Department and registering an address. The why behind the registration requirements is not relevant to the jury's considerations. While the state may want them to know the why, it is not the province of the jury to understand the whys behind the legislature's decisions. And as well, it still is subject to that prejudice analysis. Under Old Chief, it's progeny. The only thing that's relevant once the defense gives that stipulation is the conduct charge. So with that, if there are no further questions, I would ask that you reverse Mr. Powell's connection. Should we leave the jury just wondering why they have to register for what? That's the first thing they're going to ask themselves when they get back to that jury. What do you have to register for? So, Your Honor, the stipulation that's offered takes care of that. The stipulation, again, is Mr. Powell was previously convicted of a qualifying felony that requires him to register under Illinois law. So the why is that he was convicted of a prior felony that requires him to register. That specific term, sex offense or sex offender, doesn't add anything more aside from prejudice. All right. Any further questions? No. No questions. Okay. Thank you. We'll have more time in just a moment. All right. Mr. Halbert. Thank you, Your Honor. I think you'll state your name and to the record. Yes, of course. Good morning, Your Honors. May it please the Court. My name is Jacob Halbert here on behalf of the State. And I'd just briefly like to start by addressing the sentencing issue, since Your Honor had brought up some questions about it. The State, the trial court specifically mentioned that erroneous seven-year sentence. How can that be deemed insignificant? Well, it did mention that seven-year sentence once, Your Honor. But counsel advocates for the wrong standard for this court to apply. It's not that the court considered that sentence led to a greater – I'm sorry, that the court considered that incorrect sentence led to a greater sentence. That standard assumes that the issue is preserved for review. And defense counsel readily concedes in their opening brief that the issue has been waived. So the correct standard to apply here is the ineffective assistance of counsel standard. And that standard asks whether or not the result of the proceeding would have been different but for the error. And when we look at the totality of the defendant's criminal history here, as Your Honor pointed out, it's replete with information that the defendant continually disregards the law and in particular disregards his duty to register as a sex offender. So when we look at the totality of the evidence presented to the trial court, it's clear that the result of the proceeding would have been no different. And now I'd like to just turn to the first issue, if Your Honor. But actually, how do you say that? I mean, wouldn't he have taken into consideration the 12-year sentence based on the fact that the prior sentence was seven years and it didn't correct the issue? The defendant did still have a 2020 conviction of SOAR that led to a six-year sentence. So even without that seven-year sentence, we still have a criminal defendant that has been convicted of SOAR violations three times and one of those convictions resulting in a six-year sentence. So it's not that the defendant hasn't received minimal time for a SOAR conviction. He has. He's received a six-year sentence. And then turning to the first issue, the trial court acted well within its discretion when it allowed the jury to hear that the defendant was a sex offender. And to Your Honor's point, I think the problem that Your Honor brought up manifests entirely in this case. The jury has no indication of why the defendant would be required to register. And then with no indication as to why the jury's – I'm sorry, why the defendant is required to register, we have a jury that is led to speculate as to why they have to register. Well, that question is not answered under the stipulation, but they still have to follow the law, so no harm, no foul. I'm not sure that I understand, Your Honor. Well, the jury, under the stipulation, even if they're not told that it was – that he was registered as a sex offender, they're still told he had to register for a qualifying felony. All right? That's correct, Your Honor. So they've got to follow the law. So who cares if they're speculating? Correct, Your Honor, but I think when we look at Old Chief and its Illinois progeny, those cases make clear that Old Chief isn't just applied wholesale. We have to look at the specific statutory context that it arises in, and when we compare the Crawford stipulation that defendants saw here and the evidentiary alternative of introducing evidence of the sex offender's status, it's clear that those pale in comparison. The stipulation sought to introduce a generic phrase that the defendant has been convicted of a qualifying felony, as defense counsel mentioned, and that phrase is abstract. It doesn't tell the jury why he has to register. It contains no intuitive meaning for a lay juror. It fails to explain what kind of regulatory regime defendant was subject to, and in turn it allows the jury to speculate as to whether – or as to why the defendant was required to register. Sex offender, by contrast, is the statutory classification that matches the title of offense, and regardless of whether or not unlawful failure to register is the settled title of the offense, it still falls under the SORA regime, and it's still – sex offender is still an essential element of the offense. And on top of that, sex offender explains why the defendant must regularly comply with registration requirements without making the people appear overbearing. That's one of the points that Old Chief spent great lengths to bring up. We need to be able to tell a story with evidentiary depth, and when we have a situation in which the defendant is required to adhere to these stringent reporting requirements, absent any criminal context, the people appear overbearing. And then finally, it clarifies the reason behind the reporting mandate. In Old Chief – I'm sorry, without evidence of defendant sex offender status, the people's legs would essentially be cut out from underneath them and undoubtedly leave the jury wondering why the law imposed such stringent reporting requirements to begin with, just as the Eastern District of Pennsylvania recognized in Kipp and the California Appellate Court recognized in Pahina. And then just a couple more points on the first issue, and then I'll briefly touch on the sentencing issue. Defendant does attempt to collapse this case into Old Chief and its Illinois counterparts by saying that those defendants also had continuing affirmative duties to refrain from registering – I'm sorry, to refrain from possessing a firearm that is not meaningfully different from sex offenders who must continually register. That recasting of Old Chief is wrong. In Old Chief, Walker, Moore, and Taylor, the prior convictions functioned as historical qualifiers. They described who the defendant is in a generic way, and so if they later possess a gun or qualify as an armed habitual criminal, a new crime is triggered. The duty there is a negative disability. Don't possess a firearm. Don't satisfy a particular recidivist pattern. It does not require the same ongoing affirmative conduct that is required by a defendant with sex offender status. Rather, SOAR here imposes a regulatory regime of active, ongoing, repeated obligations. Defendants have to register every 90 days in person. They have to update their address within three days of moving. They have to appear in person, sign, verify, and provide accurate information. So this is not simply a case of don't do X or don't satisfy this particular recidivist pattern. It is because you are a sex offender, you must repeatedly adhere to these stringent reporting requirements. And that distinction is particularly important. When the prior conviction is just a historical qualifier, the Supreme Court was comfortable saying that a bare stipulation is conclusive evidence and anything more is mere prejudicial surplusage. But where the status itself is the ongoing operating engine of the statutory scheme, the status label has more appropriate value than in cases of unlawful possession of a weapon or in armed habitual criminal cases. The prior felonies in those cases are entirely detachable from the later charged conduct, whereas sex offender in a SOAR prosecution is not. Without the sex offender status, we lose what the defendant is required to register for and the status directs what the duty is that is opposed. The defendant also argues that a generic stipulation, namely that the defendant had a prior qualifying conviction requiring him to register, fully satisfied the people's evidentiary burden, and any reference to the sex offender status added only prejudice. This map misapprehends the role that that evidence played, though. The question for the jury was not simply whether the defendant had some obligation to report. It was whether he knowingly violated a serious statutory duty imposed because he is a sex offender under SOAR. A sterile phrase like prior qualifying felony or prior qualifying conviction tells the jury almost nothing about why the law imposes ongoing, stringent reporting requirements, why those obligations are treated as serious criminal duties rather than minor technical requirements, and why the defendant would obviously understand the gravity of compliance. On the other hand, the term sex offender immediately and accurately situates the jury in the correct statutory context. It tells the jury that the defendant's past conduct placed him under a heightened supervision and explains why he is subject to special reporting requirements. That context directly illuminates the knowledge element. It was evidence that sharpened the jury's understanding of the legal duty imposed and highlighted the defendant's knowing violation of that duty. This is not merely a situation in which the prior conviction was fully independent of the events of the later criminal behavior, but instead correlates to the defendant's thought process and conduct in committing the charged offense. Nor, as the defendant seems to argue, is this a situation in which the people introduced the evidence of his status to inflame the jury. Such evidence was introduced to satisfy an essential element of the offense and provide context regarding how and why the defendant understood his duty to register. Any prejudice that may have resulted from the defendant's status was cured by the trial court's instruction that evidence of his status was not to be considered towards evidence of his guilt. And then I see that my time is almost up, but I'd just briefly like to touch on a couple of the sentencing points that the defendant raises. The defendant argues that the trial court failed to consider his criminal history contextually. The defendant first asserts that the trial court most heavily relied on his criminal history in sentencing him to 12 years. However, the record clearly demonstrates that the trial court considered factors in aggravation and mitigation beyond criminal history alone. Even still, the trial court was well within its statutory authority to consider a defendant's criminal history. And as a proper consideration, this court should not substitute its judgment for the trial court's. And I see that my time is up. Thank you, Your Honors. Unless there's any questions. Thank you, Your Honors. Thank you, Your Honors. First, to answer your question, Your Honor, counsel is correct. The correct standard, of course, is on the sentencing issue, it's reviewed under the Strickland standard for ineffective assistance of counsel. So the question is, was the result different but for the error? Briefly, I do think that the result would be different. Again, going back to the question of significance, and pointing to the fact that the court specifically referenced that seven-year sentence, I think it's evidence that it was top of mind, even in context of his entire criminal history, when deciding to impose an extended sentence under that extended term. His previous six-year sentence wouldn't have been, so it is a significant consideration for the court. I would like to turn to the first issue again and address a few of counsel's points. He references the fact that in Olchief, in Moore, Taylor, Walker, those prior offenses are historical qualifiers or are completely independent from the charged conduct in a way that the sex offender status is not. However, the sex offender status is still divorced from the charged conduct. Of course, SORA is what is imposing the duty to register, but the charged conduct, again, is, did Mr. Powell go down to the sheriff's department and register an address? The term sex offender does not add anything to the jury's evaluation of that question. The question of why the jury needs to know, and counsel referenced Tipovi Kahina, a California case as well as Tipovi Kip, which is an unreported federal district court case out of Pennsylvania. It's not precedential in any federal court, let alone here. But in Kip, the judge determined that the term sex offender would leave the jury asking the question of why. However, in Kip, no stipulation was offered. The judge made that determination without any consideration of a stipulation before it. I think that's an incomplete evaluation of the 403 analysis. We've offered the stipulation, again, Mr. Powell was previously convicted of a qualifying felony that requires him to register under Illinois law. Importantly, the stipulation that was actually offered was Mr. Powell has been adjudicated a juvenile delinquent of a qualifying offense pursuant to Illinois statute that requires him to register as a sex offender. The only difference between those two stipulations is the term sex offender. The State, in its brief, concedes that without that term, they still would be able to prove that conduct and that stipulation would be sufficient. The reason for introducing the term sex offender is to introduce that prejudice, that bias that comes along with it. And while counsel indicates that was not the purpose, the State spends its opening argument talking about the reasoning behind the term, the registration requirement and how it helps law enforcement protect the community. That sets the tone for the entire trial. Just briefly, if I may, I know I'm running short on time. People v. Taylor also talks about the specific requirements. So when counsel is trying to make a difference between sex offender status and, you know, the felon status, in People v. Taylor, which was about an armed habitual criminal charge, the court already addresses a difference between any old felony or specifically enumerated offenses. We can extend that logic here when we're talking about the stipulation or the difference between a qualifying felony under the law versus any old felony. That provides enough context for the jury to consider the whys under the law. If there are any other questions, I can answer. Any questions? No questions. No? All right. No further questions. Thank you very much. Thank you, counsel. We will take this matter under advisement and ensure a really good course.